IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:21-cv-1543

MARK DAVIS,

    Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

    Defendant.

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

**PRELIMINARY STATEMENT**

1. Plaintiff MARK DAVIS, hereinafter referred to as "Plaintiff," brings this ERISA action against The Prudential Insurance Company of America, in its capacity as Administrator of the Walgreen Co. Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of his employment with Walgreen Co.

**PARTIES**

2. Plaintiff is a citizen and resident of Colorado Springs, Colorado.

3. Defendant is a properly organized business entity doing business in the State of Colorado.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the District of Colorado. Defendant may be served with process by serving its registered agent, C T Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to 28 U.S.C. ' 1331, in that the claim arises under the laws of the United States of America. Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the District of Colorado is proper by virtue of Defendant doing business in the District of Colorado. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*)   Here, Defendant is "found" within the District

of Colorado, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

**CONTRACTUAL AND FIDUCIARY RELATIONSHIP**

8. Plaintiff has been a covered beneficiary under a group disability benefits policy issued by Defendant at all times relevant to this action. Said policy became effective May 1, 2016.

9. The disability policy at issue was obtained by Plaintiff by virtue of Plaintiff's employment with Walgreen Co. at the time of Plaintiff's onset of disability.

10. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

11. Defendant funds the Plan benefits.

12. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

13. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's abuse of discretion.

14. Except as stated in paragraph 15 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U. S. 101 (1989).

15. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a *de novo* standard, te Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

16. In Colorado, said "discretionary clauses" are prohibited under COLO. REV. STAT. ANN. § 10-3-1116(2) (West 2008).

17. Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under COLO. REV. STAT. ANN § 10-3-1116(2) (West 2008)

18. ERISA does not preempt state bands on discretionary clauses because of the "savings clause." ERISA preempts "any and all State laws insofar as they ….relate to any employee benefits plan." The "savings clause, ":however, preserves "any law----which regulates insurance…". To fall within the savings clause, a state must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342(2003).

19. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

20. Plaintiff is a 58 year old man previously employed by Walgreen Co. as an "Asset Protection Manager."

21. Asset Protection Manager is classified under the Dictionary of Occupational Titles as Sedentary with an SVP of 7 and considered to be skilled work.

22. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on May 18, 2018, as on this date Plaintiff suffered from multiple sclerosis; fatigue; left foot drop; and neurogenic bladder.

23. Plaintiff alleges that he became disabled on May 21, 2018.

24. Plaintiff filed for short term disability benefits with Defendant.

25. Short term disability benefits were granted.

26. Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

27. On June 3, 2020, Defendant denied long term disability benefits under the Plan. Said letter allowed Plaintiff 180 days to appeal this decision.

28. At the time Defendant denied Plaintiff long term disability benefits, the disability standard in effect pursuant to the Plan was that Plaintiff must be considered unable to perform his "Own Occupation."

29. If granted the Plan would pay monthly benefits of $1,298.86.

30. On May 1, 2020, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

31. Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

32. Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the Plan.

33. Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as they require the claimant to be unable to work in "any occupation in the National Economy."

5

34. Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

35. On or about June 22, 2018, Defendant's paid consultant, Steven Donald Graham, M.D., neurology/psychiatry and neurology, performed a peer review of Plaintiff's claim file.

36. On or about June 28, 2018, Defendant's paid consultant, Steven Donald Graham, M.D., neurology/psychiatry and neurology, prepared an addendum to his peer review of Plaintiff's claim file.

37. On or about February 14, 2019, Defendant's internal consultant, Katy Netherton, MSEd., CRC, vocational rehabilitation specialist, performed a paper review of Plaintiff's claim file.

38. On or about May 31, 2019, Defendant's internal consultant, Thomas McDow, RN, BSN, clinical consultant, performed a paper review of Plaintiff's claim file.

39. On or about September 24, 2019, Defendant's internal consultant, Thomas McDow, RN, BSN, clinical consultant, performed another paper review of Plaintiff's claim file.

40. On or about September 26, 2019, Defendant's internal consultant, Katy Netherton, MSEd., CRC, vocational rehabilitation specialist, performed another paper review of Plaintiff's claim file.

41. On or about January 15, 2020, Defendant's internal consultant, Thomas McDow, RN, BSN, clinical consultant, performed another paper review of Plaintiff's claim file.

42. On or about March 2, 2020, Defendant's internal consultant, Edward Collins, M.D., performed a paper review of Plaintiff's claim file.

43. On or about May 14, 2020, Defendant's paid consultant, Stephen M. Selkirk, M.D., Ph.D., psychiatry and neurology/neurology, performed a peer review of Plaintiff's claim file.

44. On or about May 18, 2020, Defendant's internal consultant, Lindsay Neumann, MSEd., CRC, vocational forensic specialist, performed a paper review of Plaintiff's claim file.

45. On or about June 17, 2020, Defendant's paid consultant, Francisco Mendoza, PT, DPT, physical therapist, performed a paper review of Plaintiff's claim file.

46. On or about December 3, 2020, Defendant's paid consultant, Stephen M. Selkirk, M.D., Ph.D., psychiatry and neurology/neurology, performed another peer review of Plaintiff's claim file.

47. On or about January 4, 2021, Defendant's paid consultant, John Langfitt, Ph.D., ABPP-C, clinical neuropsychology, performed a paper review of Plaintiff's claim file.

48. Defendant's consultants completed their reports without examining Plaintiff.

49. On January 21, 2021, Defendant notified Plaintiff that Defendant affirmed its original decision to deny Plaintiff's claim for long term disability benefits.

50. Defendant also notified Plaintiff on January 21, 2021 that Plaintiff had exhausted his administrative remedies.

51. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

52. Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## MEDICAL FACTS

53. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

54. Plaintiff suffers from multiple sclerosis; restricted walking and climbing; attention deficit disorder (ADD); pain; and anxiety.

55. Treating physicians document continued chronic pain, as well as decreased range of motion and weakness.

56. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed his ability to engage in any form of exertional activity.

57. Further, Plaintiff's physical impairments have resulted in chronic pain and discomfort.

58. Plaintiff's treating physicians document these symptoms. Plaintiff does not assert that he suffers from said symptoms based solely on his own subjective allegations.

59. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address his multiple symptoms.

60. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

61. Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, meaning an 8-hour day, day after day, week after week, month after month.

62. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

63. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

64. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

65. However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

66. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

67. Defendant's determination was influenced by its conflict of interest.

68. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

69. The long term disability plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

70. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

71. More information promotes accurate claims assessment.

72. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

## COUNT I:
## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

73. Plaintiff incorporates those allegations contained in paragraphs 1 through 72 as though set forth at length herein.

74. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

   a. Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other occupation which his medical condition, education, training, or experience would reasonably allow;

   b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

   c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

   d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II: ATTORNEY FEES AND COSTS

75. Plaintiff repeats and realleges the allegations of paragraphs 1 through 70

above.

76. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that he is entitled to all past due short term and long term disability benefits yet unpaid;

B. Order Defendant to pay past short term and long term disability benefits retroactive to May 20, 2020 to the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E. For such other relief as may be deemed just and proper by the Court.

Dated: Houston, Texas
         June 8, 2021

                                                Respectfully submitted,

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.

By:     /s/ J. Anthony Vessel_____
      J. Anthony Vessel
         Tex. Bar. No. 24084019
         Fed. I.D. No. 1692384
      Marc S. Whitehead
         Tex. Bar No. 00785238
         Fed. I.D. No. 15465
         marc@marcwhitehead.com
         anthony@marcwhitehead.com
      Britney Anne Heath McDonald
         Tex. Bar. No. 24083158
         Fed. I.D. No. 2621983
         britney@marcwhitehead.com
      Madison Tate Donaldson
         Tex. Bar No. 24105812
         Fed. I.D. No. 3151467
         madison@marcwhitehead.com
      Selina Valdez
         Tex. Bar No. 24121872
         Fed. I.D. No. 3633062
         selina@marcwhitehead.com
      403 Heights Boulevard
      Houston, Texas 77007
      Telephone: 713-228-8888
      Facsimile: 713-225-0940
      ATTORNEY-IN-CHARGE
      FOR PLAINTIFF,
      MARK DAVIS